IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOIS McDOUGALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-2563-D |
| VS. | § | |
| | § | |
| BINSWANGER MANAGEMENT | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed diversity action alleging violations of the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001-21.556 (West 2006), the court must decide whether plaintiff has adduced evidence that would enable a reasonable trier of fact to find that her sexual harassment claim is not time-barred and to find in her favor on her retaliation claim.   Concluding that plaintiff's sexual harassment claim is barred by limitations (and that the court therefore lacks subject matter jurisdiction over it) and that a reasonable trier of fact could not find in plaintiff's favor on her retaliation claim, the court grants defendant's motion for summary judgment.

I

Defendant Binswanger Management Corporation ("Binswanger") hired plaintiff Lois McDougall ("McDougall") in 2004 as a temporary employee in the position of Executive Assistant to J. Holmes Davis, IV ("Davis"), the Senior Vice President at Binswanger's Dallas

office.[1]  Among McDougall's job responsibilities when Davis was out of the office was the requirement that she open and print all of his emails and send them to his home for review. This task required McDougall to view Davis' incoming emails, which frequently included pornographic material.  According to McDougall,[2] Davis received five to ten pornographic emails each day.

In 2005 Binswanger asked McDougall to continue as a permanent employee. McDougall told Ellen Diorio ("Diorio"), the Vice President of Human Resources at Binswanger's Philadelphia headquarters, that she would only take the job if Davis "cleaned up the porn."  P. App. 227.  McDougall also asked for Binswanger to pay for her overtime. Once Binswanger agreed to pay McDougall for overtime, McDougall accepted the position and became a permanent employee.  McDougall alleges that, after her discussion with Diorio, Davis received fewer pornographic emails, but still received one or two each week.

When she was hired as a permanent employee, McDougall signed an acknowledgment form indicating that she had received Binswanger's Employee Handbook, which included a copy of Binswanger's Anti-Harassment Policy.  The Anti-Harassment Policy stated, *inter*

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to McDougall as the summary judgment nonmovant and draws all reasonable inferences in her favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Binswanger moves to strike McDougall's summary judgment evidence and supporting brief.  Because the court is granting Binswanger's motion for summary judgment, it denies the motion to strike as moot.

*alia*, that Binswanger did not tolerate sexual harassment, and that if an employee believed she has been subjected to sexual harassment, she should report her concerns "<u>immediately</u>" to the Vice President of Human Resources.  D. App. 69 (emphasis in original).  During her August 2005 performance review, McDougall neither identified pornographic emails as an issue to be addressed nor requested a follow-up meeting with any member of Binswanger's Human Resources Department ("HR department") to discuss the issue.

In October 2005 Davis began receiving pornographic emails more frequently.  After viewing a particularly offensive email that Davis had forwarded to his wife and friends, McDougall contacted an attorney.  The attorney advised her to notify someone in the HR department and, if Binswanger did not "clean things up" within eight months, to file a complaint with the Equal Employment Opportunity Commission ("EEOC").  P. App. 229.  Acting on the advice of this attorney, McDougall printed copies of the offensive emails and videos, forwarded them by mail to Diorio, and notified Diorio that Davis was continuing to receive pornographic emails.  According to Binswanger, the company responded to McDougall's report "within minutes."  D. Br. 1.  Binswanger immediately asked Davis to take measures to stop receiving these emails and required that he undergo training "to help him better understand the issues surrounding the spam e-mails."  *Id.* at 7.  Binswanger also installed filters to block unsolicited emails, and it directly emailed individuals to request that they stop sending further spam.  McDougall acknowledges that the frequency of the pornographic emails decreased from 2006 until 2007, but she maintains they "never entirely went away."  P. App. 227.

In June 2006 McDougall completed an Employee Performance Evaluation Questionnaire in which she stated: "having the 'unsolicited' e-mail problem dealt with has definitely helped." D. App. 103. According to Binswanger, for the next three years, McDougall did not report any additional unsolicited emails despite weekly communications with Binswanger's HR department regarding other personnel matters.

According to McDougall, the frequency of pornographic emails increased in October 2008. McDougall notified Diorio, provided her copies by mail, and asked her to stop Davis' receipt of pornographic emails. Diorio emailed McDougall in response, stating that the matter was being handled. According to Binswanger, it again took steps to ensure the unsolicited emails would be blocked. Soon after McDougall's report to Diorio, Davis told McDougall that he was stopping the pornographic emails and that McDougall had his permission to delete without opening any that got through, which McDougall did.

In February 2009 Davis hired his prior administrative assistant, Melanie Abel ("Abel"), to assist with some personal work in his office. One day, McDougall told Abel that she did not like Davis' "questionable e-mails" and she had "had it taken care of." P. App. 233. While McDougall was away on vacation, Abel set up a rule in Outlook so that any "questionable" emails Davis received would go into a designated folder and McDougall would not be aware of them. When McDougall discovered what Abel had done, she became outraged. She immediately called Diorio and a person in the IT department to inform them that Abel had created a rule in Outlook so that Davis could "get the porn back." *Id*. at 235. McDougall believed that, in response to her call, Davis was "scolded" for allowing Abel to

- 4 -

use his computer.  *Id.*

On August 21, 2009 Binswanger terminated McDougall's employment.  According to Binswanger, throughout her tenure, McDougall had struggled to complete her work in a timely and efficient manner.  Additionally, McDougall committed a series of errors that the HR department attributed to her inefficiency.  For example, McDougall shipped a FedEx package to herself because she forgot to remove the old packing label; she failed to properly mail expensive trade books to Binswanger's corporate office; and she took almost one year to send out a mailing of available commercial property.  It also came to the attention of Binswanger's HR department that McDougall was struggling with technology and basic tasks and, as a result, was making excessive requests to the IT department and monopolizing the time of its few employees.[3]  As a result, Diorio decided to terminate McDougall's employment.  Diorio told McDougall her employment was being terminated because of her inability to multi-task and perform her job efficiently.

McDougall submitted a charge of discrimination with the Texas Commission on Human Rights on October 16, 2009, in which she alleged sexual harassment and retaliation.  Her charge was dismissed.  McDougall then filed the instant lawsuit in Texas state court, asserting claims for harassment and retaliation pursuant to the TCHRA.  Binswanger removed the case to this court based on diversity of citizenship.

Binswanger moves for summary judgment on both of McDougall's claims.

---

[3]According to Binswanger, McDougall sent over 199 emails to the IT department during the final six months of her employment.

McDougall opposes the motion, seeks a continuance under Fed. R. Civ. P. 56(d), and asks the court to deny Binswanger's motion as a sanction for Davis' alleged perjury.[4]

## II

Binswanger is moving for summary judgment on claims as to which McDougall will bear the burden of proof at trial.[5]   It can meet its summary judgment obligation by pointing

---

[4]McDougall contends that Davis committed perjury during his deposition and requests that, as a sanction, the court deny summary judgment under its inherent authority.  The court denies this request.  If the court were to grant the relief, this would result in denying Binswanger's summary judgment motion, meaning that the case would go to trial even though the court lacks subject matter jurisdiction over the sexual harassment claim, and even though a reasonable trier of fact could not find in McDougall's favor on her retaliation claim.  "'[T]he standard for the imposition of sanctions using the court's inherent powers is extremely high.'"  *Pillar Panama, S.A. v. DeLape*, 326 Fed. Appx. 740, 744 (5th Cir. 2009) (per curiam) (quoting *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999)); *see also Johnson v. Hankook Tire Am. Corp.*, 449 Fed. Appx. 329, 332 (5th Cir. Oct. 13, 2011) (per curiam) ("When inherent powers are invoked . . . they must be exercised with restraint and discretion" (internal quotation marks and citations omitted)).  Although the court in no way condones the type of behavior of which Davis is accused, given the disputed nature of the testimony, its immateriality to the summary judgment motion, and the "extremely high" standard for granting sanctions under the court's inherent power, the court denies McDougall's motion.  *Cf. Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 73 (5th Cir. 2011) (per curiam) (affirming imposition of sanctions where perjury was undisputed).

[5]Under Texas law, limitations would usually be an affirmative defense on which Binswanger, as the party asserting the defense, would have the burden of proof.  *See, e.g.*, *Savage v. Psychiatric Inst. of Bedford, Inc.*, 965 S.W.2d 745, 749 (Tex. App. 1998, pet. denied) ("When a defendant moves for summary judgment based on an affirmative defense such as the statute of limitations, the defendant, as movant, bears the burden of proving each essential element of that defense.").  But as the court explains below, *see infra* § IV(A), because Texas courts treat the 180-day limitation period of Tex. Lab. Code Ann. § 21.202(a) (West 2006) as "mandatory and jurisdictional," the burden of establishing compliance with § 21.202(a) is on McDougall as the party invoking the court's jurisdiction.  Additionally, McDougall has the burden of demonstrating that her claim falls within the 180-day limitation period under the continuing violation doctrine.

the court to the absence of evidence to support McDougall's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Binswanger does so, McDougall must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in McDougall's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). McDougall's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if McDougall fails to meet this burden. *Little*, 37 F.3d at 1076.

## III

Before turning to the merits of Binswanger's motion, the court considers McDougall's request that the court defer deciding the motion until Binswanger produces hard copies of certain documents that McDougall has requested.

## A

Although McDougall has not followed the procedure prescribed by Rule 56(d) (formerly Rule 56(f)), the court will treat her argument as a request under Rule 56(d)(1) and (2). "[Rule 56(d)] is an essential ingredient of the federal summary judgment scheme and provides a mechanism for dealing with the problem of premature summary judgment motions." *Parakkavetty v. Indus. Int'l, Inc.*, 2004 WL 354317, at *1 (N.D. Tex. Feb. 12, 2004) (Fitzwater, J.) (citing *Owens v. Estate of Erwin*, 968 F.Supp. 320, 322 (N.D. Tex.

1997) (Fitzwater, J.) (referring to former Rule 56(f)).  Under Rule 56(d), the court can "(1) defer considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order," provided the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d).  Rule 56(d) functions as a safe harbor that has been built into the rules so that summary judgment is not granted prematurely.  *See, e.g., Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987) (referring to Rule 56(f)).  It is "usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Id.*  Rule 56(d) offers relief where the nonmovant has not had a full opportunity to conduct—not to complete—discovery.  The two concepts are distinct.  *See McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991) (per curiam) (citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1985)) (rejecting nonmovant's contention that district court abused its discretion by failing to permit him to complete discovery before granting summary judgment, and holding that "Rule 56 does not require that discovery take place before granting summary judgment.").

"[Rule 56(d)] motions are broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).  Nevertheless, to warrant a continuance for purposes of obtaining discovery, "a party must indicate to the court by some statement . . . why [it] needs additional discovery and *how* the additional discovery will create a genuine issue of material fact." *Stults v. Conoco, Inc*., 76 F.3d 651, 657-58 (5th Cir.

1996) (internal quotation marks omitted) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)). It is not sufficient for a summary judgment nonmovant to allege that discovery is incomplete or that discovery will produce needed but unspecified facts. *See Washington*, 901 F.2d at 1284-85. The party must demonstrate "how the additional time will enable [it] to rebut the movant's allegations of no genuine issue of fact." *Id.* at 1286 (internal quotation marks omitted) (quoting *Weir v. Anaconda Co.*, 773 F.2d 1073, 1083 (10th Cir. 1985)). A nonmovant is not entitled to a continuance if it "fail[s] to explain what discovery [it] did have, why it was inadequate, and what [it] expected to learn from further discovery" and gives only "vague assertions of the need for additional discovery." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 n.5 (5th Cir. 1991) (internal quotation marks omitted)).

B

McDougall argues that Binswanger's production of documents via an electronic cloud database, refusal to produce hard copies, and additional refusal to produce all but a few of McDougall's designated documents resulted in the suppression of evidence and "[p]laintiff's not being ab[le] to present facts essential to justify Plaintiff's opposition to Defendant's motion." P. Br. 23. This is precisely the type of vague allegation that discovery is incomplete or that discovery will produce needed but unspecified facts that courts have found does not warrant a continuance. *See*, *e.g.*, *Bauer*, 169 F.3d at 968 (holding that allegation in Title VII case that plaintiff's "claim would be bolstered by additional discovery of statistical information" did not warrant continuance); *Fontenot v. Upjohn Co.*, 780 F.2d

- 9 -

1190, 1194 (5th Cir. 1986) (affirming denial of continuance where plaintiff stated "only that (1) the plaintiff had not yet had sufficient time or resources to complete discovery, and (2) the facts creating genuine issues for trial are peculiarly within the knowledge of the defendant"). McDougall has not only failed to submit a declaration or affidavit in support of a continuance, she has not indicated by other means why she requires additional discovery to respond to Binswanger's motion and how this additional discovery will enable her to create a genuine issue of material fact. *See Fontenot*, 780 F.2d at 1194 (denying motion for continuance where counsel failed to submit affidavit or state any facts that would have required continuance). Accordingly, construing McDougall's request as a motion for a continuance under Rule 56(d), the court denies the motion.

IV

The court now considers whether McDougall's sexual harassment claim must be dismissed on the ground that she failed to file an administrative complaint within 180 days of the alleged harassment.

A

Before suing an employer under the TCHRA, an aggrieved employee must first exhaust her administrative remedies by filing a complaint with the Texas Workforce Commission ("TWC") "not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code Ann. § 21.202(a) (West 2006); *see also Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 486 (Tex. 1991), *overruled on other*

grounds by *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010) . This 180-day time

limit is "mandatory and jurisdictional." *Specialty Retailers, Inc. v. DeMoranville*, 933

S.W.2d 490, 492 (Tex. 1996); *Schroeder*, 813 S.W.2d at 487-88.[6]   In other words, a

plaintiff's failure to file a complaint within the 180-day period is a failure to exhaust

administrative remedies that deprives the court of subject matter jurisdiction. *Lamar Univ.*

*v. Jordan*, 2011 WL 550089, at *2 (Tex. App. Feb. 17, 2011, no pet.) (mem. op.) (citing *City*

*of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008); *Harris v. Showcase Chevrolet*, 231

S.W.3d 559, 561 (Tex. App. 2007, no pet.)).   Because § 21.202(a) is "mandatory and

jurisdictional," the burden of establishing compliance with the statute is on McDougall as

the plaintiff. *See, e..g., Sanchez v. Kennedy*, 202 S.W.3d 857, 859 (Tex. App. 2006, no pet.)

---

[6]In *In re United Services Automobile Ass'n* the Texas Supreme Court held that the two-year statute of limitations for filing suit in an employment-discrimination action, Tex. Lab. Code Ann. § 21.256 (West 2006), is not a jurisdictional prerequisite to suit. *USAA*, 307 S.W.3d at 310.   But the court did not address whether the 180-day deadline imposed by § 21.202 for filing an administrative complaint is similarly non-jurisdictional.  Since *USAA* was decided, Texas courts of appeals have continued to hold that § 21.202 imposes a jurisdictional prerequisite to filing suit. *See*, *e.g.*, *Forge v. Nueces County*, 350 S.W.3d 740, 746 (Tex. App. 2011, no pet.) (noting that timely filing of administrative complaint under § 21.202 is "mandatory and jurisdictional" prerequisite to filing suit); *Sw. Bell Tel., L.P. v. Edwards*, 2011 WL 3672288, at *6 (Tex. App. Aug. 23, 2011, no pet.) (mem. op.) (concluding that court lacked subject matter jurisdiction where plaintiff failed to file complaint with TWC); *Tex. Youth Comm'n v. Garza*, 2011 WL 2937431, at *3 n.1 (Tex. App. July 21, 2011, no pet.) (mem. op.) (joining three other Texas courts of appeals in holding that, even after *USAA*, "jurisdiction is still implicated by the plaintiff's compliance or non-compliance with section 21.201" (collecting cases)); *Lueck v. State*, 325 S.W.3d 752, 759-767 (Tex. App. 2010, pet. filed) (holding that "unless and until the supreme court departs from its view in *Schroeder* that the [TCHRA] requires exhaustion of remedies, we will continue to treat the 180-day filing requirement as 'mandatory and jurisdictional'" (citations and some internal quotation marks omitted)).

- 11 -

("The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction." (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993))).

An exception to strict application of the 180-day limitations period is the continuing violation doctrine. *Santi v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 312 S.W.3d 800, 804 (Tex. App. 2009, no pet.). "The continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Id.* at 804-05 (citing *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App. 2006, no pet.)). When a charge is timely filed as to one act of discrimination, the "continuing violation" doctrine expands the scope of the discriminatory events that are actionable, as long as one of the events occurs within the 180-day period. *See Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 41 (Tex. App. 1998, pet. denied) (citing *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560-61 (5th Cir. 1985)). Thus "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Tex. S. Univ. v. Rodriguez*, 2011 WL 2150238, at *2 (Tex. App. June 2, 2011, no pet.) (mem. op.) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)) (internal quotation marks omitted). Under the continuing violation doctrine, the 180-day period begins when "acts supportive of a civil rights action are, or should be, apparent to a reasonably prudent person in the same or a similar position." *Wal-Mart Stores*, 979 S.W.2d

- 12 -

at 42 (citing *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P. A.*, 139 F.3d 532, 537 (5th Cir. 1998)); *Glass*, 737 F.2d at 1560-61.  The focus is on what event should, in fairness and logic, have alerted the average layperson to act to protect her rights.  *Id.* (citing *Webb*, 139 F.3d at 537; *Glass*, 757 F.2d at 1561).  The burden of proving a continuing violation is on McDougall as the party seeking to avoid the bar of § 21.202(a).

### B

Binswanger maintains that because McDougall failed to file her complaint with the TWC within 180 days of the alleged sexual harassment, and because she cannot establish that the continuing violation doctrine applies, the court is deprived of subject matter jurisdiction.  McDougall argues in opposition that the evidence shows a "continuous policy of hostile environment and sexual harassment" by Davis "all the way to the end of Plaintiff's employment on August 21, 2009."  P. Br. 30.  She posits that because there was a "constant flow of porn," the continuing violation doctrine applies and her claim is not barred under § 21.202(a).  *Id.* at 32.

McDougall filed her complaint with the TWC on October 16, 2009.  To avoid summary judgment through reliance on the continuing violation doctrine, McDougall must introduce evidence that would enable the trier of fact[7] to find that one or more of the

---

[7]The court is deciding whether McDougall has complied with § 21.202(a) by applying the Rule 56 summary judgment procedure and standard rather than the Rule 12(b)(1) procedure and standard.  Not only have the parties addressed this issue under the summary judgment standard and procedure, the result is the same regardless which standard and procedure are applied.  It is arguable, however, that because § 21.202(a) operates to deprive the court of subject matter jurisdiction, and federal procedure applies in this diversity case,

allegedly discriminatory acts occurred within the 180 days preceding the filing of her complaint with the TWC.  *Rodriguez*, 2011 WL 2150238, at *2; *Wal-Mart Stores*, 979 S.W.2d at 41.  In other words, McDougall must introduce evidence that would permit the finding that she was subjected to sexual harassment after April 19, 2009.

Although McDougall asserts in her response brief that "[t]he evidence shows a continuous policy of hostile environment and sexual harassment by Holmes Davis from 2001, before Plaintiff was employed, all the way to the end of Plaintiff's employment on August 21, 2009,"  P. Br. 30, she does not specifically cite any evidence that would enable a reasonable trier of fact to find that she was subjected to sexual harassment at any time after April 19, 2009.  Her assertion that "[t]he porn never entirely went away, ever. It always came in at some level," *id.* at 28 (citing P. App. 96), is insufficient because this vague and generalized statement does not permit the reasonable finding that McDougall was subjected to viewing pornographic email during the period April 19, 2009 to August 21, 2009.  McDougall asserts that "[a]mong the very few offensive porn emails produced by Binswanger from the cloud was one with extensive porn dated August 13, 2009, well within the 180 day period before the EEOC filing on October 16, 2009."  *Id.* (citing P. App. 258-67).  McDougall cites no evidence, however, that would support the reasonable finding that she *actually viewed* this particular email or any of its attachments during the few days of her employment the remained (i.e., from August 13 to August 21, 2009).  Davis sent the email

Rule 12(b)(1) should control.

- 14 -

to several individuals, and McDougall was not listed as a recipient.  And McDougall did not testify in her deposition or elsewhere that she had viewed this email *while employed at Binswanger*.  Similarly, McDougall's deposition testimony that she complained to Diorio that Abel had set up folders for Davis' pornographic emails while McDougall was away on vacation in February 2009 does not permit the reasonable finding that McDougall viewed any pornographic email *after April 19, 2009*.  Finally, McDougall's suggestion that there is "additional evidence . . . of hostile and harassing conduct within the 180 day period that is being suppressed by Binswanger" is unavailing.  *Id.* McDougall should herself be able to attest to whether she was subjected to viewing pornographic emails after April 19, 2009.

McDougall has failed to introduce sufficient evidence that would enable a reasonable trier of fact to find that she was subjected to a hostile work environment within 180 days of filing her TWC charge.  Consequently, she has failed to adduce evidence that would enable a reasonable trier of fact to find that the court has subject matter jurisdiction over her sexual harassment claim under the TCHRA.  The court therefore grants Binswanger's motion for summary judgment and dismisses this claim.

V

The court next considers McDougall's claim for retaliation under the TCHRA.

A

The Texas Legislature drafted the TCHRA to correlate "state law with federal law in the area of discrimination in employment."  *Schroeder*, 813 S.W.2d at 485.  The TCHRA

specifically states that one of its purposes is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments (42 U.S.C. Section 2000e et seq.)." Tex. Lab. Code Ann. § 21.001 (West 2006). Accordingly, the TCHRA is interpreted in a manner consistent with federal laws that prohibit employment discrimination. *Specialty Retailers*, 933 S.W.2d at 492. The analysis of McDougall's claim under the TCHRA is identical to that applied to claims brought under Title VII. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) ("the law governing claims under the TCHRA and Title VII is identical."). "Because the TCHRA is the state counterpart to Title VII, the same standards apply." *Allison v. City of Fort Worth, Tex.*, 60 F.Supp.2d 589, 593 (N.D. Tex. 1999) (McBryde J.) (citing *Schroeder*, 813 S.W.2d at 485; *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App. 1993, writ denied)).

Under the TCHRA and Title VII, it is unlawful to retaliate or discriminate against a person who opposes a discriminatory practice. Tex. Lab. Code Ann. § 21.055 (West 2006); *see also* 42 U.S.C. § 2000e-3(a). McDougall offers no direct evidence of retaliation, so she must proceed under the *McDonnell Douglas* burden shifting paradigm. She must demonstrate a prima facie case for retaliation by showing that (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the initial

- 16 -

requirement that McDougall show a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal").

If McDougall establishes a prima facie case, the burden shifts to Binswanger to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If Binswanger meets its production burden, McDougall must adduce evidence that would permit a reasonable trier of fact to find that the adverse employment action would not have occurred "but for" the protected conduct. *See Walker*, 2005 WL 2278080, at *9. "After the employer has produced evidence to rebut the employee's *prima facie* case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a *prima facie* case." *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); *Long*, 88 F.3d at 305 n.4). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII

was a 'but for' cause of the adverse employment decision."  *Long*, 88 F.3d at 305 n.4.[8]

B

Binswanger argues that McDougall cannot establish a prima facie case of retaliation because there is no evidence of a causal connection between McDougall's complaints to Diorio and her termination.  In response, McDougall seems to suggest that because Diorio knew that McDougall had complained about Davis' pornographic emails and had also participated in the decision to terminate McDougall's employment, this establishes that Diorio decided to terminate McDougall's employment *because* McDougall made these complaints.

Because the causal link requirement of a prima facie case is minimal, the court will assume *arguendo* that McDougall has satisfied it.  Even so, she has not met her burden of introducing evidence that would enable a reasonable trier of fact to find "but for" causation at the third step of the *McDonnell Douglas* paradigm.  This is because a reasonable trier of fact could not find that the decision to terminate McDougall's employment in August 2009 was motivated by her complaints made months earlier, in February 2009.  *See Clark Cnty.*

_____

[8]McDougall appears to argue that after the Fifth Circuit's opinion in *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010), a plaintiff alleging retaliation is no longer required to establish "but-for" causation.  Contrary to this argument, the Fifth Circuit recently clarified that its "decision in *Xerox* did not dispense with [the] final 'but for' requirement for avoiding summary judgment."  *Nunley v. City of Waco*, 440 Fed. Appx. 275, 281 (5th Cir. 2011) (per curiam); *see also Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (on rehearing) (explaining that at final stage of the burden-shifting analysis, "the fact-finder must decide whether retaliation was the but-for cause for the employer's action." (citations omitted)).

*Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (internal quotation marks and citation omitted)).  McDougall first complained about Davis' emails in 2005.  She complained again in 2008.  A reasonable trier of fact could  not find that these complaints, coupled with McDougall's complaint in 2009 that Abel had created a rule in Outlook so that Davis could "get the porn back," were a "but for" cause of her termination.

Moreover, McDougall has not adduced evidence that creates a genuine issue of material fact regarding whether Binswanger's stated reasons for her termination—poor performance and an inability to multitask and work efficiently—were pretextual.[9]  Although McDougall characterizes Binswanger's evidence of errors she made in the final six months of her employment as "minor" and "non-event[s]" and attributes "some of the computer problems" she experienced to Abel, *see* P. Br. 40-41, she does not adduce evidence that would enable a reasonable trier of fact to find that she did not make the mistakes that Binswanger documented or that her excessive requests to the IT department and inability to keep up with her work were not the real reasons for her termination.  It is the law of this circuit that, where an employer offers more than one nondiscriminatory reason for taking the adverse employment action that the plaintiff challenges, "'[t]he plaintiff must put forward

---

[9]Although McDougall suggests in her brief that she intends to proceed under the "mixed-motives" alternative, she only argues that her termination was pretext for retaliation.

evidence rebutting each of the nondiscriminatory reasons the employer articulates.'" *Kretchmer v. Eveden, Inc.*, 2009 WL 854719, at *7 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010); *see also Jackson v. Watkins*, 2009 WL 1437824, at *8 (N.D. Tex. May 21, 2009) (Fitzwater, C.J.), *aff'd*, 619 F.3d 463 (5th Cir. 2010).

Accordingly, the court grants Binswanger's motion for summary judgment dismissing McDougall's TCHRA retaliation claim.

*   *   *

For the reasons explained, the court grants Binswanger's motion for summary judgment and dismisses this lawsuit with prejudice by judgment filed today. Binswanger's motion to strike is denied as moot.

**SO ORDERED**.

April 3, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE